The next case on calendar for argument is Franklin v. State of California Youth Authority. The Police Department, Gerald Mosley with the California Attorney General's Office. This is my second go-round with this case. I was on the prior panel. I understand, Your Honor, that you're familiar with this. I absolutely am. I do not have the pleasure of arguing the first one, but I am here representing the California Department of Corrections and Rehabilitation. And I've actually forgotten if in the first appeal it was called the California Department of Corrections and Rehabilitation or not. It's changed its name. At trial, it was the Department of Corrections, simply. And there was an entity known as the California Youth Authority. That entity has now been absorbed into the Department of Corrections. So if I refer to the Youth Authority, we'd have one defendant and one appellant, and it's now called the long name, the California Department of Corrections and Rehabilitation. At counsel table is also Patricia Nevinen, counsel for the department. Do you plan to share any argument time? I'll be argument. This, as Justice Rawlinson understands, this appeal stems from what we consider to be a very unusual sequence of decisions, a sequence of decisions that follow the department's termination of the plaintiff, Lauren Franklin, from her position at a correctional institution as a youth correctional counselor. That occurred over 10 years ago. After that termination, on her appeal to the courts, to the state system, the state administrative body, the state personnel board, and the state court of appeal examined her termination. They both issued opinions that were fairly detailed, enumerated her misconduct, assessed her misconduct, and affirmed her termination, and made explicit decisions that she was not fit for that position. Not only was she insubordinate, she was a risk. She actually created a danger in this unique and peculiar environment of a correctional institution. And all of that was given to the jury, which was remarkable to me, that there was an instruction given to the jury regarding all of the findings that were made and the fact that the termination had been upheld. So with the jury being aware of all of that and nevertheless rendering a verdict in favor of Ms. Franklin, how do you think we should overturn that? Your Honor, because the jury was not told one crucial, and we would argue the most crucial piece of that puzzle, the jury was told in instruction number two what Lauren Franklin had done and had been preclusively determined that she had committed this misconduct. They were told that. They were not told. And weren't they told that that termination was upheld? They were not instructed. There was nothing in the instructions to the jury about that. And there was nothing in the instructions that told the jury that it has been preclusively determined that if you commit acts like these in a correctional institution under California law, that is, in fact, good cause to terminate you. I think what you asked for in your motion in limine, not that this was cause, but that these were legitimate business reasons. And it seems to me that's an invitation to apply a standard that's in the retaliation Title VII mold of language rather than simply what the state court was dealing with. And it seems to me the motion in limine is almost asking for a directed verdict. Your Honor, in the motion in limine, well, first of all, the motion in limine was an invited motion. It came after a brief exchange. Invited by whom? It was invited by the court. Okay. At the termination of one of the motions for summary adjudication, when the court had determined that it was preclusively determined that these particular acts had been committed, counsel for the department asked the court, is the court saying that those findings of fact are legitimate business reasons? The court then said that's a matter of law, invited us to bring a motion in limine. In our motion in limine, we argued if you take that misconduct, what's been preclusively determined is if you take that misconduct and you apply California law, government code 1972, then as a matter of law that constitutes a legitimate business reason. Not necessarily. Because you can have mixed motives under Title VII. And what the court said in this case was that the fact that the youth authority had caused the termination of Franklin was conclusively established under the state court personnel proceedings. That left open the issue of whether or not there was also what the motivations were. And that's a separate issue. And that's why the case was reversed initially. Because there were two parallel tracks of litigation. One was whether or not under state law there was cause for termination. The other was under federal law, whether or not that termination was motivated by an impermissible status. Yes, Your Honor. And what we've tried to do is to respect and apply that very distinction, that distinction between the motivation of these decision makers on the one hand and what constitutes good cause on the other hand. And as this court observed in the first opinion, even if the state found good cause, there's still this motivation issue left. And our argument is that our instruction did not go to motivation. Our instruction went to this separate issue, as this court enunciated, a separate issue as to whether or not that particular misconduct in this setting is good cause, leaving aside for the jury to determine whether or not the decision makers had ulterior motives, motives apart from that good cause, retaliatory motives, leaving that for the jury. That's the distinction that we understand this court made, made with considerable attention in the memorandum brief. But the very instruction you asked the jury, asked the court to give the jury, how did it, the failure to give it, change the burden at all? I mean, the bottom line is, having sat and tried these cases, there's a prima facie case presented by the plaintiff. Then the employer comes in with their burden to state their reason. Then the employer or then the plaintiff has to come back and pretext. Or if it's a mixed result, he can come back, he can force the employer to come back and say, I would have done it even if this were the problem. My worry is that what you ask the judge to give to the jury is more than what is required to suggest what your burden was. If the good court in California said that your reasons were fine, that good court that was making these decisions said there are the reasons they were doing it, that's exactly what happened. You take that as true, and that's what you got. You got that jury instruction. And all you wanted was an added. And I don't know why, what does it have to do with the burden? The added instruction, the added stuff you want, what does it have to do with this case? We would still have all the burden to prove motivation. We would still have our prima facie burden to prove motivation. We would still have to resist. But it's a mixed after that. And so what does it show? They gave all the instructions necessary for the type of case that it was. You wanted an added little deal. You wanted to add that it had business purpose in effect. We wanted to add that it was a, not the subjective reasons of the decision makers, but according under California law, that those were legitimate, that was a legitimate basis to terminate. That's the same thing as saying there was cause. That's the same thing as saying there was cause for the termination. There was good cause for termination. And as this court pointed out, that's a different issue than motivation. And the only thing that should have been tried was motivation, not good cause. So when the jury is sitting in their deliberation room, they were allowed. Now, but just a minute. Why is that the case? Tell me the case that says, in shifting the burdens that we have, the only thing that one could say about your side, the employer's side, is these are the facts, and on these facts, she was terminated, which were exactly the instructions given by the court. At that point, the plaintiff has a burden to come forward and say it's pretextual or it's mixed. And if he says mixed, then you have the burden to come forth and say, even with mixed, we would have done it even if that other thing were true. But I don't understand why the instruction you're fighting about here helps you in any way given the burden shifting that we have to do in the district court. That's my question. It helps us. I mean, it may help you by having a directed verdict, but that's not what we're trying to do here. We're not asking for a directed verdict. And we recognize the jury would have been free to decide the motive issue. But when they're deliberating on the motivation issue, they were free, they were allowed to decide, depending on who they believed or didn't believe from the witness stand, they were allowed to come to the conclusion that looking at this list of behavior in the abstract, we don't think that's good enough to fire someone. And they should have been blocked from making that initial assessment because just that assessment had already been preclusively determined. I disagree with you. I think that what they found was even though there was cause to terminate her, that cause was, I mean, the reason for the termination was motivated by a protected status. Not that there wasn't cause. The motivation for it is what they found. They found the reason for the firing was not proper. Not that the firing was not proper, but the reason for it. But the problem is, is that we don't know that they decided there was good cause, but despite that, there was a bad motivation. We assume that they followed the instructions. We presume that juries followed the instructions, and the instructions explicitly told them there was cause. I know, Your Honor, the instructions did not tell them there was good cause. There is nothing in the instructions. The instructions told them that they were to, that the finding of cause had preclusive effect. That's the same thing as telling them that there was cause for the firing. I was really surprised that the court even gave that instruction. I thought that helped you out tremendously. The instructions were that she committed a number of acts, and there was even a description, an assessment, it was insubordination. But the court did not go further than that and say that was good cause. As a matter of fact, that's our issue on appeal, that the court did not. Where is the instruction in the record? Because I thought that the instruction specifically established that cause had been determined. No, that's why we're appealing it. Where is the instruction? Instruction number two. Where is that in the record? That is in the further excerpts of record. It's a very thin excerpt, and it's denominated Pellant's further excerpts of record. Okay, go ahead. Well, if the jury then decided that that misconduct was simply not good enough, then of course the department is starting off at a disadvantage because now the jury is looking for an illegitimate motive even before they start looking at the evidence of retaliation or what that illegitimate motive might be. They're already primed to look for an illegitimate motive. And another way of looking at the prejudice is if they decided that that conduct, because they're lay jurors, they don't work in a prison institution, if they decide that, you know, this list of misconduct isn't that bad, then even if they decide the decision-makers were influenced by that misconduct, even if they come to that decision, they still don't believe that that misconduct is a, quote, lawful reason. So when they come to question number two on the special verdict, they check no. Question number two says, was there a lawful reason in addition to the illegitimate motive? Was there a lawful motive? And they say no. They say no, even if they've decided that this misconduct did in fact influence the decision-makers because they haven't been told that that misconduct is a lawful reason to terminate someone. If they had been given that instruction, that additional instruction, that these reasons looked at in the abstract, not about motivation, looked at in the abstract are in fact good cause under California law, then when they go into the jury room, it would have been more difficult. Not impossible. It would not have been a directed verdict. But it certainly would have been more difficult for the jury to decide that those decision-makers just ignored the fact that they appreciate this conduct as good cause. They just pushed it off the table and they were solely motivated by a desire to retaliate against Frank. Was there anything in the record regarding the finding by the personnel board? Was that argument made and that evidence presented to the jury? No, no. The trial, of course, occurred after the rejection of our motion in memory. And the court was somewhat restrictive on the evidence of the SBB, but I can't recall to the court exactly what was restricted. But the answer to your question is no. All right. You've exceeded your time. We'll give you a minute for rebuttal. Oh, yes. I'll save my time for rebuttal. Well, you don't have any time. I'll give you a minute for rebuttal. Right over. You went into the red. You were in the deficit. It goes fast. It does, Your Honor. Please, the court. My name is John Scott. I'm the attorney for Ms. Franklin. I was also trial counsel and I also had the pleasure of being here three years ago, Your Honor, when this case first went up. It seems to me, if I understand counsel's argument correctly, is that because a state administrative body found cause in the absence of any evidence of retaliation, that somehow we should forget about the supremacy clause. And if there is retaliation, the cause is still legitimate. It's still lawful. And I'm having a hard time getting my head around that, and I think that's why we went to trial in the first place. The point being, if she was terminated in violation of Title VII for retaliatory reasons, then it was not legitimate cause. And they wanted an instruction that said it was legitimate cause. It's not legitimate cause if it's retaliatory. Yes, there was cause, and in essence, I believe the state's position, and I should have made a point of this in my brief, and I didn't, but it's page 29 of the appellant's opening brief. It says, quote, Proper instructions would have enhanced the opportunity for a jury finding. In other words, it seems to me what the state is saying is they don't want just the neutral Ninth Circuit model jury instructions. They want something special. They want the court, the district court here in this court, to make new law to say somehow there should be a special instruction in this kind of case that gives them an enhanced opportunity for a jury finding. Well, if I understand their point, what they're really saying is they wanted something that would be the equivalent of these acts were committed. They got it. And in the absence of improper motivation, these acts are sufficient to justify dismissal. Which is exactly what they got. Well, that's not what the instruction said. The instruction just said these acts have been committed, and you have to assume that they were committed. They didn't say, and that would be enough to permit somebody to be fired if there was no improper motive. Well, they knew that she was fired. I mean, we were there at trial, and the jury knew that my client had been terminated. The jury heard evidence of what she'd done since her termination, and there was no secret here at trial that my client had been terminated. No, but the question is not whether she was terminated. It's whether there was cause for her termination in your opponent's view. And the jury wasn't told that there was cause for her termination. They were told that she had done certain things. I understand your point that legitimate business reasons steps over into motivation, arguably. Well, Your Honor, they were asking for it to be found as a matter of law that there was legitimate cause. Well, what about if I understood the opponent's argument, there's a place where the jury checks. Were there other lawful reasons? In other words, is it a mixed? No, there weren't. That had been adjudicated to the contrary by the California administrative authorities. Well, but the administrative, the State Personnel Board hearing heard no evidence of any retaliation. No, but it's not the retaliation question if I understand the opponent's argument. He's saying that the jury is saying it wasn't mixed motive. There was no lawful motive. I suppose there are two ways to interpret that. Well, there are, and you draw inferences in favor of the verdict. And it seems to me what the State is doing now is asking you to somehow try to draw some inferences in their favor from the verdict when there are a number of inferences that can be drawn. Counsel, what was the evidence presented at trial regarding the decision of the Personnel Board? Was there any evidence of that? I don't, well, there was no direct evidence of what happened at the Personnel Board, I don't think. I think what happened was the State got the collateral estoppel finding that what came out of those findings was established and couldn't be refuted. And as you indicated, that was kind of remarkable that they got the collateral estoppel. But they did get collateral estoppel, and I couldn't rebut at trial the findings made at the State Personnel Board, the factual findings. And, you know, it seems to me here it's kind of like I'd like to have my cake and eat it too. They got the, I was barred by the doctrine of collateral estoppel to rebut any of these acts of misconduct. The jury was told that they had to assume as true all this misconduct occurred, and they heard testimony from the director, Mr. Alicorn, the director of Department of Corrections, testified at trial that the reasons for the termination included, but were not limited to, all of the findings that were collateral estoppel. So the jury knew that she was terminated for a variety of reasons, including the five reasons that I couldn't rebut. And the jury knew that my client had been terminated. And the jury was told that these findings were collateral estoppel, and I could not be refuted. Now, whether or not the judge told the jury, I don't think the judge told the jury, you know, a State Personnel Board had a hearing, and as a result of the hearing, these are the conclusions. But I don't know, that seems to me, what difference does it make? The jury's told I can't refute these. And if I can't refute these, and the issue here is retaliation, it seems to me, Your Honor, that they get to argue cause, which they did. They get to argue they had all these reasons to terminate her, which they did. They get the benefit of collateral estoppel that I can't rebut most of the primary allegations of misconduct. They got that. And now the issue becomes, the jury has heard all this evidence of cause. Now, the key word here is, from my point of view, legitimate. And it seems to me, ultimately, if you look at the analysis, is cause legitimate if it's ultimately done for retaliatory purpose? And we introduced evidence here that other employees did similar conduct for which they were not disciplined or terminated. That was ultimately the only place I could go in this case to show pretext. That, okay, yes, my client did A, B, C, and D. And we introduced evidence from other employees that other employees did similar conduct, A, B, C, or D, and were not disciplined or certainly were not terminated. So my case was, yes, in a vacuum, we can say this misconduct, A, B, C, and D, sounds like, quote, unquote, legitimate cause for termination. But if my client is being treated differently from other employees, and if other employees who do the same thing are not terminated or disciplined, and my client has a prima facie case of retaliation, and it's hard to imagine more evidence of retaliation. They investigated her because she filed a lawsuit and because a newspaper article that came after it, and then the whole series of events thereafter. The issue is, is the cause legitimate if it's in violation of Title VII? And it seems to me, how do you tell, if you want to tell the jury that that's, it's, quote, unquote, legitimate cause to terminate her, it's almost, it's close to a directed verdict. How do I, how does the jury say it's unlawful retaliation if it's legitimate cause? Well, just a minute. Reading the jury instructions, instruction number two was the one which said, these are facts of Franklin's misconduct, and they are true. That's what instruction two said. Yes. Instruction ten then said, if you find that retaliation was a substantial or motivating factor in the youth authority's decision to terminate employment, then you must find whether the youth authority was also motivated by a lawful reason. If you find the youth authority's decision was motivated by retaliation and a lawful reason, then you must decide whether the youth authority had proved by a preponderance of the evidence that it would have made the same decision. Now, the worry that I have, and this is what I want you to speak to, the jury determined that the youth authority's actions were not motivated by one or more lawful reasons, despite exhibit two, or instruction two. So the fact that they determined that their actions were not motivated by one or more lawful reasons despite instruction two, then have we got a problem? Should we have given the instruction that the youth authority wanted to give? Because it seems as if just stating they were lawful, or stating they were in fact true, was not enough to get to the point of the lawful reasons. And that's the worry I have, because the jury making the instruction, or making the verdict, suggested there was no lawful reason. Yet, everybody assumes, everybody read, everybody had in here, that there was misconduct, which was absolutely misconduct. Now, if they hadn't have gone with that check, and had gone down and made the state come forward and show that there was something between the two, that would be something. But how do I get around that part of how they checked it that makes the state's arguments seem like it's absolute? Well, Your Honor, it might be an interesting argument, except, again, it seems to me you're drawing inferences here, or making inferences, that the jury felt that there could be lawful reasons if they thought it was all retaliation. In other words, look at it this way. The jury has heard she did all this misconduct, and the jury knows that she was terminated for that misconduct. They don't know that. They know she was terminated, period. They are trying to determine why. Well, no, Your Honor. That's not true, because Mr. Alarcon testified, and what came into evidence was the recommendation for the termination, the Palomino report, and those were exhibits, and I can tell you where the tabs are. Did the investigation come in, where they investigated all of these? Yes. Yes, the whole investigation came in, and Mr. Alarcon testified as to the reason she was terminated, and he testified the reason she was terminated included the reasons that the jury instruction was given. Okay? So that's not as good, just because the guy who's in charge comes in and says, well, this is the reason it happened. It's not as good as having such an instruction to suggest that not only that, but that has been determined to be an applicable firing for that. In other words, you can have that happen. Now, my worry is that if I have to look at this and see what the situation is, have we really said to the jury what needed to be determined? I'm back to burden of proof again. I ask him the same question. In the normal trial, the facts would come in, but we wouldn't have them as stated as true, and that was his privilege based on the decision that was made by the board. But did we need one further fact, and that is a lawful termination. Well, that alone could be, and Judge Cammey states it better than me in his question, even though that might be a lawful. Was it really the motivation, which is what their instruction wanted to give? Well, number one, they never gave an instruction. Well, I know. That's what they wanted to give. Well, there's nothing in the record they wanted any instruction. I mean, there's nothing in the record. It was a motion in limine. Yes. It was a motion in limine, and the motion in limine said, and if you look at it, they want, before voir dire, they want an order. It doesn't say we want a jury instruction. What their motion in limine says, if you read it, it says, before voir dire, they want an order that, as a matter of law, these are legitimate business reasons. And what Judge Phillips said was, wait a minute, these are not legitimate business reasons if it's done for retaliatory purpose. And I'm going to give you collateral estoppel. I'm going to let you argue to the jury, and I can't rebut that she committed all this misconduct, but it seems to me what you get back to, legitimate implies lawful. And is it lawful if it's retaliatory? And the jury was there to decide if it was retaliatory, and the jury heard evidence that other people did similar conduct for which they were not disciplined. And so the jury heard the evidence from the state of all, you know, it was overwhelming evidence that, you know, they introduced of all this misconduct. Significant portions of it I couldn't dispute, even though I wish I could have, but my client couldn't dispute that she did this misconduct. And the issue ultimately came down to was the retaliation. And so what I'm having trouble with is they're trying to turn a motion in limine into a jury instruction issue when they never said it was a jury instruction issue. It was really a motion to reconsider a previous motion for summary judgment. And they never, when the jury instructions twice in the record, when the judge asked them, are you satisfied with the jury instructions, they said, yes, the jury instructions are acceptable. And so it seems to me, Your Honor, there's well-established Ninth Circuit law that if you don't raise an objection on jury instruction, you've essentially waived it, number one. Number two, I understand there are cases where one could argue that there's previous motions where someone has asked for a jury instruction or raised an issue that they want a jury instruction to preserve it. But that's not this case. In fact, their term, quote, unquote, objective justification, the first time that term was ever used was in their opening brief. This issue was never raised, this idea of objective justification versus subjective justification. And what is really the heart of this appeal in their opening brief was never raised below. There's nowhere in the record where they said to anywhere in prior proceedings they wanted to raise this issue of objective justification. You've exceeded your time. All right. Thank you. We'll give you one minute for rebuttal. Thanks. I appreciate the minute, Your Honor. One quick point to start off with. Collateral estoppel applies to legal issues and factual issues. It was applied in this case to factual issues about what she had done, but it's also a legal issue as to what California civil service law does when it applies to these facts. And collateral estoppel, of course, applies to legal issues in addition. Our proposed order that we submitted with the motion in limine, I believe it's the last line in that order says the jury will be so instructed. That was a request for instruction. There was no doubt about that. What's your response to opposing counsel's observation that when you were queried about the jury instructions, you didn't voice any objection? Do you agree with that? Yes, Your Honor. That occurred in March. The denial of our motion in limine occurred in February. By the time that exchange happened with the court, our request and the unambiguous denial had already occurred. It was a matter of record. What we were looking at were the jury instructions that then came out of that back-and-forth process, and we had no further objections. One other point. Counsel seems to argue that if you have illegitimate motives, that concept of an illegitimate motive somehow bleeds into the concept of good cause or objectively legitimate reasons. Our reading of this Court's first opinion is directly contrary to that concept. It is that motivation and legitimate justification are two different concepts. Well, legitimate. The whole theory of Title VII and the previous appeal and everything else is that justification isn't legitimate if it's motivated by retaliation. And certainly it's not. That motivation is not legitimate, and that's a violation of Title VII. But going back to the... So if you tell the jury it's legitimate, don't they immediately draw the conclusion that, well, it didn't violate Title VII? Well, there was no... There should have been no difficulty in making clear to the jury the distinction that this Court made and telling the jury that, look, this misconduct in the abstract, or using some other term, is legitimate reason under California law to terminate someone. Now, your duty, jury, is to decide what, in fact, motivated these individual human beings who made this decision. But nothing like that was proposed. Well, Your Honor, we didn't get as far as articulating a specific instruction. You could. I mean, you could have. There was nothing that stopped you from articulating precisely that proposed instruction that you've laid out here. No, Your Honor. Nothing prevented it, except, of course, that the Court, in denying our motion limiting the Court, was very clear that that was a very clear denial. Well, it wasn't a denial. It was not a denial of a proposed instruction. You always have the option, when you're settling instructions, to take another shot at it. Once the Court has heard the evidence, the Court may be more inclined to include an instruction of the type that you proffered or that you wanted to proffer. So I don't think you were forever foreclosed from doing that. No, and we're not. I wouldn't go so far as to say we were foreclosed. And we didn't take another attempt. But I would suggest that that wasn't our first attempt. That had followed up on the back and forth with the judge after the summary adjudication. It was a brief discussion about whether or not these were legitimate reasons. And the next step was the motion limiting. So we had had a pattern with the Court. There's a huge difference, in my view, as a trial judge from getting a concept positive and getting a jury instruction, a specific jury instruction. It makes a big difference in how you look at it. When somebody just, you know, throws out an idea as opposed to giving you a concrete proposed instruction that you can look at in view of the evidence that's been presented. That's my difficulty with how this issue has come to us. It was not a concrete jury instruction that was denied. It was a concept. Yes, Your Honor. I mean, Your Honor is correct. We did not take what I would suggest would have been a third try. By delineating and articulating a specific instruction. We believe that clearly that would not have been availing. And it may, in fact, have tried the Court's patience. Because at that point in time. The judge is not really, I mean, the judge is pretty mellow. I didn't mean to suggest otherwise, Your Honor. All right. Thank you, counsel. Thank you to both counsels. Thank you. The cases are getting submitted for decision by the Court.
judges: Canby, Rawlinson, Smith N. R.